Okay, the next matter on the Court's docket is 525-0469, Country Mutual Insurance Company v. Freeburg Community Consolidated School Dist. No. 70, Mr. Cutter. Good morning. May it please the Court, Counsel, my name is David Cutter and I represent Plaintiff Appellant, Country Mutual Insurance Company. We are here today because, subject to a reservation of rights, Country Mutual agreed to defend its insurers, Freeburg Community Consolidated School Dist. No. 70, and Lawrence Meigs, against Doe 5's lawsuit. While Country Mutual had a long insurance relationship with this particular school district and had defended a number of claims involving the same alleged perpetrator, but different in later periods of abuse, Country Mutual did not have records establishing that it provided insurance to the school district during the period of Doe 5's alleged abuse, which is from 1977, when he alleged the abuse began, to 1981, when he left the school district. Nonetheless, Country Mutual agreed to defend its insurers, subject to a reservation of rights. It also filed a declaratory judgment action with the circuit court, seeking a ruling that Country Mutual owed no duty to defend or indemnify the insurers against Doe 5's claims. And in that action, it explicitly fled a request that the court declared had no duty to defend, in part because there was insufficient evidence of coverage, and because of other coverage defenses. But you were already defending? We were already defending. Correct, Your Honor. So your deck action went to both issues, but you weren't withdrawing your defense? Correct. And when it became clear, there was a period of time when it was unclear whether Doe 5 was proceeding with his claims. But when it seemed as if those claims were moving forward, Country served discovery, addressing the critical issue, and only the critical issue, of the evidence that the school district had of the policies that it sought coverage under for Doe 5's claims. That was an interesting question for me. Why didn't you attach the insurance policies to your deck action? Well, the... And you're the one claiming that there's no duty to defend, there's no duty to indemnify. And usually, under contract cases, it's your burden to put forth a contract. Because in this particular case, there's not, we don't have the insurance policies. We have some secondary evidence from periods before and after 1977 to 1981, we don't have the insurance policies. And that was the primary reason that, that one of the significant reasons that Country filed the declaratory judgment action. And under Illinois law, when the insurer has the burden of proving the terms and conditions of policies that have not been located. And so, that's why we didn't attach the policies, because they don't exist. In your client's possession? Correct. We don't, as I mentioned, we don't have copies of these policies. Again, these policies were, or the trigger coverage for abuse claims is when, during the period of the alleged abuse. So here, the alleged abuse was 1977 to 1981. It was many years earlier than the other Doe 5, the other Doe cases involving Freeburg, in which the alleged abuse was much later. When we did have the insurance policies. And there were some coverage issues with some of those that were litigated. There were a number of those cases that Country defended, but this case was different. But nonetheless, Country agreed to defend, and we filed the declaratory judgment action. Which you should. Correct. Right, to protect your interests. Exactly. Why does a stay prejudice you? You've already had three years go by. Why not stay the decade? A stay prejudices us for several reasons. You're correct that a number of, a period of time went by. But that's, again, because of, there was inactivity with Doe 5's claims. And it was unclear if that case was going to proceed. And we didn't want to litigate a coverage case if the claim that was the subject of the coverage case wasn't going to proceed. But the reason we're prejudiced here, and the reason why the circuit court's decision was error, because under Illinois law, the circuit court in ruling said, the court does agree with Mr. Cronin's assessment that the reservation of rights deals with indemnity. And if the court is wrong, the court will take this up after the conclusion of 21L701, if that is in fact necessary. That's the reference to the underlying case. The court made that comment because the insurance argued that once we agreed to defend, the reservation of rights was only with indemnity. And it didn't matter what we said. But the reason why we're prejudiced is because under Illinois law, there is no subject to circumstances that aren't present here, if the policy provides for a basis of recoupment. Of course, we don't know what these policies would provide. But a carrier cannot recoup amounts paid under the general agent's case. So once we agree to defend and we litigate the coverage case, if in a period of time it's determined that the insurers don't have sufficient evidence of the policies, then we can then not have to defend anymore, but we can't get the money back. And that is an important point. And that is why when the... But that's litigated based on the language of the policy, which you don't have. Correct, but there's a threshold issue about what the policy is. I understand, but my question to you was, how are you prejudiced by a stay? Because if the case, for example, is dismissed tomorrow, you're going to still proceed with your death action. Or at least that's your argument. No, no. If the case... If the DOE-5 case is dismissed tomorrow, then we would not be able to proceed with our coverage action because there would be no indemnification obligation. And we would have already paid the amounts to defend. I thought you said that your argument was you could get your defense costs back. No, if I said that, I misspoke. We cannot get them back. We cannot get them back. And so that's under the general agent's case. But I still don't understand your prejudice on the stay. Because the prejudice is that if in two years we demonstrate that the insurers don't have any evidence of the insurance policies under which they seek coverage, right? So the circuit court says, country, mutual, you're right. They can't satisfy their burden of proof. But what if it's not stayed? If it's stayed today, you still get the opportunity to, at some point in the future, depending on what happens with DOE-5, go forward with your death action. We get to go forward, but at that point, to the extent we ultimately prevail, we can't get the money we spent defending back. That's the prejudice. Because we're not... But you're already paying for defense costs that you agreed to pay for. So was the agreement to pay provisional? That is, we're only going to pay up to three years? No, it was subject to a reservation of rights to... Which is usually a general reservation. Right, but in this instance, the reservation of rights was in part because of this issue about whether the insurers can meet the terms, can establish the terms and conditions of the policies. But the reservation didn't have any conditions associated with it, like after three years, we're going to file a death action. Correct, but the declaratory judgment action said we seek a declaration that we owe no duty to defend. So when we filed that action, the insurers knew that we were coming to court and we were seeking a declaration that we had no duty to defend. And so if we prevailed on that declaration, we would then not... We wouldn't be providing defense anymore. But if the coverage action is stayed, then we are continuing to defend. Let's say the coverage action is stayed and in two years there's a finding of liability against the school district that they're seeking coverage for. At that point, we will be unable to adjudicate the duty... The duty to defend will be over, but we wouldn't be unable to get the money back that we paid because of the Illinois law on recruitment. But you would be able to litigate the indemnification? Correct, correct. So it seems to me that you put your counsel, you put counsel for Freeburg in a very difficult spot because you're one day providing their defense and on the day you file your death action you're saying we're not going to provide your defense anymore. Am I understanding that correctly? You're understanding the facts correctly, but I don't agree that we're putting them in a difficult spot because what we're doing... Backing up, under the Illinois Supreme Court ELCO decision, which is the seminal estoppel decision, the Supreme Court said that a carrier that doesn't believe it has a duty to defend can either file a prompt declaratory judgment action or defend under a reservation of rights. And if it does neither, then it subsequently is stopped to rely on policy-based defenses to deny coverage. But there's no case law that says you can't do both. So here we did both. We defended under a reservation of rights and we filed a declaratory judgment action. And that actually protected the insurer because the insurer got the benefit of the defense. And just to be clear, we're not... We do not appoint... We're paying for their defense costs with their chosen counsel. So it's not like we appointed a country mutual, you know, panel attorney to do this. We're paying for their defense costs with their chosen counsel, so they're getting the benefit of those defense costs while we litigate the coverage action. And so... And before the circuit court, the insurance argued their primary argument, and the record reflects this. I believe the hearing transcript reflects it. They argued that once we agreed to defend and filed the declaratory judgment action, we were done. We couldn't challenge the duty to defend. It was immutable. We were defending to the end. And they said it was black-letter law. And that was, as I read before, the circuit court's decision was based on that. And that's why we argued, and I've been sitting here for this morning, and I've heard the questions about standard of review. That's why we said, when it's a legal issue like that, that whether by filing the DJ, we gave up the right to challenge the duty to defend, and the reservation of rights was only for indemnity, that legal issue could be de novo standard of review, because that is a legal determination. But I'm not sure that the trial court got to that point. I saw that in the record, where argument was made by Mr. Cronin, that you were done once you did the duty to defend. But I'm not sure the trial court reached those issues when it issued the statement. I believe, Your Honor, if you read the colloquy right before the court's ruling, where country's counsel showed the declaratory judgment action to the circuit court, and Mr. Cronin said, but you can't do that. That's only with respect to the duty to indemnify. That the reservation of rights is only with respect to the duty to indemnify. The circuit court says, I've heard enough, and says the court does agree that the reservation of rights deals with indemnity. But if the court goes on to say, and if the court is wrong, the court will take it up after the conclusion of 21L701, if that is in fact necessary. That's why I don't think that the court reached your issue. But that sentence, Your Honor, we believe shows the circuit court's error. Because if the court is wrong about the duty to, what she said is if the court was wrong about the reservation of rights not being with respect to the duty to defend, the circuit court can't take it up after the resolution of the underlying action. And that's because of the recruitment rule in Illinois. So at the end of the underlying action, if we've paid however much money for defense, and the defense is over, she can't take up the duty to defend. The circuit court can't take up the duty to defend at that point. Because we would have paid, there's no right to recruitment, and therefore it's an error to conclude that you could take that up at the end of the case. Can your client waive its right to claim the duty to defend? My client... By inaction for three years? I do not believe that's the case at all. I think if you look, as we pointed out to the circuit court, the context matters, and here it was the context of the Doe 5 claim that wasn't proceeding, which is why the coverage action didn't proceed. But after a certain point in time, when Doe 5 starts proceeding with this claim, and again, country doesn't want to force its insurers to litigate a coverage action where the underlying claim might go away. And so I think if you look at the case law, you look at that contextual point, which I think is important, and then you look at the case law for waiver and estoppel, it can't satisfy the test to show that we somehow waived or estopped them based on promissory reliance, because the insurers knew all along that we were disputing the duty to defend. Through the reservation of rights? Through the declaratory judgment action, yes, Your Honor. Okay, but my concern still is that the declaratory relief was not requested until many years after the duty, the payment of the defense costs under the reservation of rights. Well, the coverage action was filed shortly after the claim came in. So to that extent, the declaratory judgment action, it was filed on... I don't have the specific date right here, but it was filed shortly after... It was filed and then sat. Correct, it did sit. It sat for three years. You're correct about that, yes. Okay, I misstated that. Okay. It was filed fairly recently, but it took no activity for three years. Correct, and again, that's because the Doe-5 claim was not pursued either. So with that, we would ask that this Court reverse the order granting the stay and order the Circuit Court to deny the motion to stay. Thank you. We'll have a few minutes after Mr. Cronin gives us his version of events. Mr. Cronin? Good morning. May it please the Court? My name is Sean Cronin, attorney for Freeburg Community School District. I also represent Lawrence Meggs, who is also a defendant, because he was an administrator at the school during the time period of the allegations, and it's alleged that he committed negligence. That's important because when we talk about prejudice later on and who's actually being prejudiced here, it's not just a taxpaying body, Freeburg School District. Can you speak up just a bit? I'm having trouble hearing you.  It's not just Freeburg Community School District that's being prejudiced here. It's supposed to have coverage. It's Mr. Meggs, who was also insured on the policy for the 30 years he worked there and expected to be covered by this insurance policy for everything he did or didn't do while he's an employee, a public employee of Freeburg Community School District. So I represent both of those entities. This is an interlocutory appeal on the narrow issue of a temporary stay granted by the trial court in the D.J. action with regard to coverage. That is a very standard stay order that's issued all the time in Misleading Remedies Court on coverage actions while there's an underlying tort claim pending. The Weber case establishes its black letter law that with regard to the issue of indemnification, that's exactly what the court has to do. It is not right until there's an adjudication of the underlying exposure, whether that's a settlement or a verdict. They're arguing about the duty to defend. As they have stated numerous times, oh, we accept the duty to defend, but under a reservation of rights. And what they've failed to advise you, and what should be obvious from the record, is that there is no reservation of rights in the appellate court record here. They just keep saying that. We reserved our rights. Where did they do that? I don't see it. They accepted the duty to defend. That's been admitted in both the trial court and this court. It was admitted by counsel multiple times in oral argument. He says we reserved our rights. How and when did they do that? There's no document that says that. They've referred to multiple cases like Elko and Jones. There's no standard letter that went from the insurance company to the insurer saying that we're doing this under a reservation of rights? Judge, I can tell you from my personal knowledge that there is a letter where they accept the duty to defend, and as an officer of the court I can tell you it has the words reservation of rights in it. But it's not in the record. But it's not in the record. And this is their appeal. And I think that's a threshold issue. I think they're appealing on a document, a fundamental document they haven't put before you. And for that reason alone. And I didn't see that letter raised in the transcript of proceedings when you and me were arguing about this being thrown out to the judge. Was that admitted in this case? It was not. It's not admitted in the trial court either. It was discussed just the same way it was here today. They said, Judge, we reserved our rights. And then the court took that as gospel because an officer of the court said it. And again, there is a letter out there. But I don't know exactly what it says as I stand here. And more importantly, you don't know what it says. And on page 12 of their brief where they cite ELCO and the insurance company's two options, which are send a reservation of rights letter, setting forth what you're reserving, what rights are those? It's pivotal. Or you can file a D.J. action. Those are the two options. I'm suggesting that as far as this court knows, they didn't do the first one at all. They accepted the duty to defend. And then they honored that duty to defend for three and a half years. And that really should be the end of the story. And that's why estoppel was discussed. And if you look at general agent's insurance that they cite on page 12, that's when they talk about the reservation of rights letter and that the language of it is part of the analysis you have to do. What did they reserve? What did they say? They were reserving to put my client on notice that they might lose this duty to defend. That's been accepted as far as my client knows. And that's also really important into how we got to that hearing you're talking about, Justice Cates. The way we got there was they accepted a duty to defend. And then we wouldn't do anything for three and a half years. By the way, they didn't file the D.J. action until eight months after the underlying complaint. That's another act of delay. Accept the duty to defend, wait another eight months, slip this D.J. in there, and then every time we go before the D.J. court, Judge Kaptan say, Judge, we've all agreed this case is effectively stayed. That is what we reported to that court for three years. She reset it for every six months. Hey, guys, what's going on? Oh, Judge, you know, the underlying case is still pending. Okay, I just want to keep tabs on it. We'll just wait another six months. Everyone always agreed the whole thing was stayed. No one ever called me and said, hey, we're going to challenge the duty to defend that we accepted three and a half years ago. They didn't file a motion. They didn't send a notice of withdrawing. They did nothing. They just sent some interrogatories and requests for production. To my clients, great confusion. And I said, what are you doing? We've told the court a million times this is stayed. They go, well, we just think we should be able to conduct some discovery on the policy. So we filed a motion, a formal motion to stay that we thought we had all agreed to for three and a half years. In response to that motion to stay, and if you read it, it's in the record, we at that time believed that they were just challenging indemnification, that they wanted to bring that up prematurely. Because it never occurred to us they could possibly be challenging their duty to defend that they accepted three and a half years ago, especially since they didn't try to withdraw it. File a motion. Attack our affirmative defenses about estoppel and waiver. They did none of that stuff. So we filed a motion to stay, and you'll see that we just said, well, Weber says you can't do that. It's not right. You have to wait until there's a judgment or a settlement. Then they filed a response and created this issue that we're here before you to discuss. Surprisingly, through a back channel. And now they've gotten us to file a motion to stay, which is a pathway to get jurisdiction to the appellate court so they can get this Trojan horse issue before you, which is, well, now we want to talk about whether or not we waived our duty to defend, whether or not we're stopped from bringing it up three and a half years later. Let me suggest this. Had they filed a motion, for example, a motion to withdraw their duty to defend three and a half years later and Judge Kapton would have denied it, we wouldn't be here because that's not an appealable interlocutory order. The motion to stay is. And if you read their briefing, they don't want to talk about the stay. They want to talk about whether or not they are not barred from challenging the duty to defend. They want to talk about whether or not our affirmative defenses of estoppel and waiver are valid and have merit. But those haven't been ruled upon at all. No one filed a motion for summary judgment. Those issues are still open, and as the court noted, the court specifically said those issues are still open. If I'm wrong, we'll bring this up later. So they're trying to shoehorn those issues into a very narrow interlocutory appeal, which is about a stay, to get this court to make a decision for the trial court that the trial court has jurisdiction to make and has not yet made. So I think it's all nonsense. I don't think this court has jurisdiction to hear the issues of estoppel and waiver or latches. This court's job is very narrow. It is, did the trial court abuse its discretion in granting a temporary stay in a DJ action pending the outcome of the underlying claim? It happens all the time, and I don't think the court abused its discretion. I think the court did the right thing. Counsel talks about prejudice. Let's balance those prejudices. On one side, you have an insurance company, a sophisticated insurance company that litigates all the time. They know exactly what they're supposed to do. They know if they wanted to, they could have challenged the duty to defend on the face of the pleadings on day one, and I know that they know that because Doe 1, going back to 2011, I handled that coverage matter, too. And they did exactly that. They didn't accept the duty to defend under reservation of rights. At that time, in 2011, before Judge McGlynn, they immediately filed a motion for summary judgment and said, we don't have a duty to defend, and here's why, and the policy says this, and it's outside the scope of it. And we litigated that. And Judge McGlynn denied their motion for summary judgment and said, you do have a duty to defend. And that's why in Doe 2 and Doe 3 and Doe 4 and the other ones, 6, 7, and 8, that have all been filed after this one, which is called Doe 5, they've always accepted the duty to defend. So we haven't just been, like, led down the primrose path on this case. We've been led down that path on seven other cases, and six other cases where they've actually paid the settlement. And I'm not disclosing confidential settlements, those are public, because this is a school district. Right? So every step of the way since 2011, they've communicated to us since they lost that initial summary judgment from McGlynn, we're honoring our duty to defend, we're always going to do it, and we're going to honor our duty to indemnify. So who's been prejudiced? The school district will be massively prejudiced. Who pays for the cost of defense if this big insurance company doesn't? The taxpayers of Freeburg Community School District. Who suffers? I don't know. Maybe they fire teachers. Maybe they have to reduce services to children. They'll have to do either one of those two things or massively raise taxes to suddenly pay the cost of defense. And since 2011, all of these cases, they've paid the cost of defense, and they've agreed to do so here, and the way they claim to have reserved it is not confirmative. Also, Mr. Maggs would be prejudiced. This is an individual retiree on a fixed public retirement income. He would have to pay his cost of defense that they've agreed to pay and paid for three and a half years and that the policy says they have to pay. They've admitted that they provided this insurance to Freeburg for 55 years. They admitted they provided insurance prior to 77 and after 81, which is conveniently the time period that the underlying complaint alleges these things happened, right? The guy that did these terrible things or is alleged to do these terrible things is the same guy in all these cases, Bill 1 through 8, ever since 2011. It's the same person. These are the same time periods. Lest they try to tell you they're not, that's really a misrepresentation. The guy walked there during the same period. They could very well discover that the allegations in the complaint are not exact. This happened to children. Their memory isn't great about these traumatic events. They conveniently now suddenly three and a half years say, hey, remember that policy we agreed that we had a duty to defend under? We can't find it. Why don't you guys have it? I can tell you that though we don't, we can't find actual policy either. We're not them. What we do have is minutes of board meetings from 1976 and 77 where the board voted to renew the policies. That evidence isn't before you because that wasn't in the record because no one ever filed a motion to challenge that. They snuck it in on the back end of this motion to stay. And so when they say we don't have a policy, it doesn't exist. Well, if they don't have a policy, it's because they lost it. The evidence supports that there is a policy. All these cases support that there's policies, and they just admitted they had policies before 77 and 81. What a convenient gap they suddenly have. They're sick of paying for these cases. They didn't see it coming. They keep getting filed, and they're struggling to find a way out of it. And that's all this is. I think we have it covered that the question presented is just the narrow issue of the state. They're trying to expand it. I don't think the court has jurisdiction to do that. Another dispositive issue that's a threshold issue, Joe Five, that individual, is a necessary party to this action. He's also a necessary party to the trial court action. They never served him. They named him, but they never served him. And if you look at the transcript of the hearing, that was presented to the court as, like, a housekeeping matter. And the court said, yeah, go ahead and serve him. But he's not a party to this action, and he's required to be. And I think that's dispositive. He has a due process right to address this. The coverage for this action flows through, potentially, to his injuries. That's exactly why Illinois law says that the underlying tort plaintiff is a necessary party. Well, they've kept him away. Now, he's not here filing a brief. He's not here telling you what his thoughts on this matter are. And this court's been deprived of his opinions, and he's more importantly been deprived of due process, because he has a property right in this coverage also. And that is squarely on them. They had to name him. It's their D.J. action. They had to serve him. They didn't. They even had an opportunity. They still haven't. They could have brought him into this case, and they still didn't. I think the stay is appropriate in the first place, because they're the ones that waste it all the time. There's no question that a stay is appropriate for the issue of indemnification under Weber. What they're now saying to you, I think, is that they want to bifurcate that. Oh, yeah, you still have to stay on the indemnification issue. And we still, under Peppers, can't introduce evidence that might overlap with the trial court. To find out if there's coverage under this policy, you have to say who did what, when did they do it, 1978, 1980, 1982, and they admit there was a policy. How did he do it? What was his position in the district? All of those questions have to be decided in the underlying case, and that's exactly what Peppers v. Merrill Lynn is about. You can't adjudicate those issues in a declaratory judgment action if it invades the purpose of the case. And there's no way to bifurcate and cut out this duty to defend issue and not invade upon those issues in the purview of the trial court. There's also no way to do that and not invade upon the properly stayed, which they admit, indemnification aspect of the coverage issue. And so we think you should uphold the court's temporary stay. We do not think they've established that the court abuses discretion at all, and we would ask you to affirm and just send it back to the court to continue this stay and let the underlying case play out. Mr. Sullivan. Ms. Linden, have you repeated something you said before? One important argument was the lack of jurisdiction argument, that they were trying to shoehorn in an estoppel argument, and there was another argument you said. Waiver and laches. Those all came up in the oral argument at the trial court level, because when this was kind of shoehorned into the trial court, it was a case of, I don't know, three and a half years. They're stopped from doing it. They've waived it. Whatever you want to call it. They waived too long. It's the equitable defense of laches. It's one or all of those things. But regardless, the court has the power to stay and the court has broad discretion to stay. Whether or not the court bases it on estoppel or waiver or laches. I don't understand how they're prejudiced by a motion to stay. He argues that they are. What is your response? I share your confusion, Justice. I don't think they're prejudiced either. I don't think they're any more prejudiced than they were during the three and a half years that they continued to defend the case after they had agreed to do so. And to be really frank with you, I think what's happening is in the last two cases, six and seven, they tried to get the district to try to kick in on settlement. They're trying to put pressure on us, and I think they think a really great way to put pressure on us is steal away the cost of defense they've agreed to provide. And they think that will give them leverage to resolve this case and maybe the district will have to kick in some money. I'm guessing. Because otherwise, they're not prejudiced. Justice Shelton? No questions. Nothing further. Okay. Thank you. Thank you very much. Mr. Cutter? Thank you, Your Honors. Mr. Cutter, I have a question for you. Why didn't the insurance company file something in this case to bring in Doe 5? We did not serve Doe 5. And then the trial, I think it was effectively because of the pace of the case, the way that the case proceeded. Again, we weren't sure if Doe 5 was proceeding with his claims against the school district. But you were the ones that decided to serve discovery in this case and get the case moving along, right? Correct. So you knew that Doe 5 was a necessary party. With your experience, you would know that. Correct. And yet, we have no effort by the insurance company to serve Doe 5. Well, the trial court granted leave. In the same order, the trial court granted leave to serve Doe 5. But then the trial court stayed the case. And again... So you don't think you could serve Doe 5, and why did this stay? Correct. I mean, the... And if we had, I mean, even if we could have, it would have had no effect because the case was served. The case was stayed. So we didn't want to do something that was going to, you know, cause proceedings to proceed that weren't necessary when the case was stayed. What about the argument that there is no reservation of rights letter in the record? There was no dispute that there was a reservation of rights letter. It was discussed at the hearing. I have the letter here. But it wasn't before the trial court. If there was a dispute about the reservation of rights letter, Mr. Cronin could have put it in his record, but... I know, but the burden is on you. Correct, but again, there was no dispute that we reserved rights. That's not disputed. They're not denying that we reserved rights. Yes, but there is a dispute as to the nature of the reservation of rights, and without the actual letter, how do we know the nature of the reservation of rights? Correct. Well, the way you know the nature of the reservation of rights is we filed a declaratory judgment action. And that stated specifically that we were seeking relief with respect to the duty to defend. There was no surprise on the part of the school district or Mr. Meigs that we were disputing the duty to defend. It was in the declaratory judgment action multiple times. In fact, each count, the first prayer for relief said declare there were no policies. And then each count that said, in the alternative, said if there are policies, declare that other coverage defenses apply. So you can alert, the question is, did the insurer have knowledge of the basis of the reason that we were denying coverage? Any, they did have a reservation of rights letter, which I understand is not on the record. But any questions about, about what our basis was were in the declaratory judgment complaint. And that's the, the ALCA decision says that's one way you reserve your rights is by filing a declaratory judgment action. And Mr. Cronin has said, well, why don't we file a motion to try to withdraw from the duty to defend? But we weren't withdrawing from the duty to defend, we were just, we were defending under a reservation of rights, and we were seeking to litigate it. So it literally made no sense for us to file a motion, because we, we needed the information. And this is where I want to come back to prejudice. I don't believe they can satisfy the elements of promissory. Regardless of whether they can satisfy it, there wouldn't be a defense of estoppel that they could raise as an affirmative matter. They could, if the coverage action proceeded, yes. They could certainly argue that our conduct in handling the litigation somehow estops us. But the Illinois case law, and we cited in our brief on that issue, that applies when you defend without letting the insurer know what the basis for your coverage position is. But that circles back around to the fact that we don't know what that is. Well, I would come back to say you do know what that is, based upon the declaratory judgment complaint. And that says it very plainly. You were sent for three years while you paid the defense. That is true, it was inactive for a period of time. But I want to come back to prejudice and fairness, because all we're asking here is for the insurers to provide us with the information that they say establishes the terms and conditions of the policy. That's the only issue the discovery went to. And you heard a lot from Mr. Cronin about policy periods and policies before and policies after. None of that's in the record either. Well, to be fair, none of this is in the record. I mean, the only issue is the argument on the motion to stay. Correct. That's the very narrow issue that Mr. Cronin directs this Court to. Correct, and the narrow issue is, did we lose the duty to challenge the duty to defend by defending under a reservation of rights? By the transfer. All the Court did was grant the motion to stay that was filed by Freeberg, not you. Correct. Okay, unfortunately your time is up. Okay, I appreciate it.